477 So.2d 110 (1985)
Robert P. RYAN
v.
STATE of Louisiana and Livingston Parish Police Jury.
No. 84 CA 0680.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
On Rehearing September 11, 1985.
Writ Denied October 11, 1985.
Gail Sheffield, Asst. Dist. Atty., Amite, for Police Jury appellant.
*111 John R. Burgess, Livingston, Bert K. Robinson, Baton Rouge, for plaintiff appellee.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
This is an appeal from the trial court judgment in a wrongful death action in favor of plaintiff, Robert Ryan.

FACTS
On the night of December 10,1978, Bradley S. Ryan and his roommate, Marc Fournet attended a social gathering at the home of George Vicknair in Baton Rouge. Both Fournet and Ryan drove their own cars to the party. Ryan arrived at the party at approximately 7:00 p.m. Vicknair, Fournet and approximately five of the guests played cards in one room while Ryan and five or six guests socialized. The only alcoholic beverage served at the party that night was beer (between one and one-half to two cases). The beer was consumed by 11:30 p.m. After the other guests had departed, Ryan and Fournet remained at Vicknair's residence and played a game of Password. At about 2:15 a.m. the game ended and Ryan drove off in his own vehicle. Fournet left approximately fifteen minutes later. Both were headed for their trailer on 303 Judalon Road, Denham Springs.
As Fournet turned from Lockhart Road, headed north onto Burgess Road, he noticed the headlights of Ryan's car approaching from behind. Ryan also turned onto Burgess Road headed north. As Ryan entered a sharp left curve his car left the highway, travelled on the right shoulder, and entered the ditch to the right. The car then re-entered the highway and overturned, pinning Ryan beneath the dash. Fournet noticed Ryan's headlights come out of the curve then disappear. He turned his car and headed south to find out if anything was wrong. Upon arrival at the scene he found Ryan pinned under the car. He consoled him for a moment, then left to call for help. Ryan was extricated from the vehicle and rushed to the hospital where he was pronounced dead on arrival. A blood sample was drawn by the coroner and a blood alcohol test was later performed by the State Police Crime Laboratory. The results of that test indicated that at the time of death, Ryan's blood alcohol level was .24.

TRIAL COURT
Robert P. Ryan, filed this suit seeking compensation for the wrongful death of his son. He also sought compensation for pain and mental anguish suffered by Bradley and for the property damage incurred as a result of the accident. Judgment was entered in favor of plaintiff and against defendant. The trial court, in its written reasons for judgment, found that there was a sharp, unmarked and uncontrolled curve at the point of the accident which was dangerous and defective. The Police Jury knew of the dangerous and defective condition of the curve and was negligent in failing to take remedial steps to correct it. The blood sample was unreliable, the chain of custody of the blood sample was unreliable, and consequently the defendant failed to bear its burden of proving the affirmative defense of contributory negligence.
The Police Jury appeals, alleging that the trial court erred (1) in finding the cause of the accident to be the dangerous and defective condition of the roadway, (2) in failing to find that the decedent was contributorily negligent, (3) in finding the chain of custody of the blood sample to be defective, (4) in admitting the testimony of Dr. Monroe Samuels, (5) in assessing the quantum of damages for pain and suffering, and (6) in granting $3,750.00 property damages for the loss of the vehicle.

STANDARD OF REVIEW
Plaintiff's case was presented on January 19, 1983, as scheduled. On the second day of trial, at which time defendant was scheduled to present its case, the parties were informed that the trial judge was ill. They were then ordered by the court to *112 proceed with the trial by deposition, preserving all objections to be ruled on later. Defendant admits that the record is complete. However, defendant argues that the manifest error standard of review does not apply to this case.
The general rule followed by appellate courts in reviewing the factual findings made by trial courts is that an appellate court should give great weight to the factual findings of the trial court unless such findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). One of the primary reasons for this standard of review is that the trial court is better able to evaluate the testimony and credibility of live witnesses, whereas, an appellate court has access only to the "cold record." Canter v. Koehring Co., 283 So.2d 716 (La.1973). Here the trial judge relied totally on depositions in evaluating defendant's witnesses. We cannot give plaintiff's witnesses the benefit of manifest error and not give the same benefit to defendants. Consequently, we hold that where the trial judge relies totally upon depositions of the witnesses of the only litigating defendant in rendering his decision, as did the trial judge in the case before us, the manifest error standard of review of the factual findings of a trial court does not apply. Schwarz v. Bourgeois, 422 So.2d 1176 (La.App. 4th Cir. 1982), writ denied, 429 So.2d 153 (La.1983); Abu Ali v. Guillory, 271 So.2d 882 (La. App. 4th Cir.1973). This court is as capable as the trial court of making factual findings based on the "cold record."

CONDITION OF THE ROADWAY/CAUSATION
Defendant alleges that the roadway was not dangerous or defective, but even if found to be dangerous and defective, the condition of the roadway was not the sole cause of the accident.
Mr. Donald Burgess, an employee of the Louisiana Department of Transportation and Development, and a thirty-nine year resident of Burgess Road testified relative to the condition of Burgess Road. The accident occurred within a couple of hundred feet from Mr. Burgess' residence. He stated that at the time of the accident the right shoulder of the road was approximately twelve to fifteen inches wide at the curve, narrowing to eight inches as the road straightened. Numerous potholes existed on the road surface in the curved portion of the highway. In addition, the curve was unmarked and no speed limit was posted. Two one-vehicle accidents had occurred at this curve prior to the accident in question. Prior to December 11, 1978, Mr. Burgess had discussed the dangerous condition of the roadway with members of the Police Jury, thus giving them knowledge of the defective and dangerous condition of the road in the time frame in which the accident occurred.
Mr. Duaine T. Evans, consulting traffic engineer, expressed the opinion that in order to compensate for the severity of the curve, a curve of this nature should have been posted with an advisory speed of 25 miles per hour in addition to its having been properly marked with various recommended warning signs. In traversing a curve the friction between a vehicle's tires and the roadway normally counteracts the centrifugal force which pulls the vehicle toward the outside of the curve. It was Mr. Evans' opinion that the potholes on the road surface reduced the frictional force of the tires and the roadway thus possibly allowing the centrifugal force to pull Bradley Ryan's vehicle to the right off the roadway to the shoulder and into the ditch.
From a review of the record we find that the section of Burgess Road on which the accident occurred was dangerous and defective. The Police Jury had advance knowledge of this dangerous and defective condition and failed to take appropriate action to remedy this condition. "Where there are unreasonably dangerous conditions on the road or shoulder, the state (Police Jury) is charged with the responsibility of correcting them or posting adequate warning of their presence." Wilkinson v. Department of Transportation and Development, 434 So.2d 1155, 1156 (La. *113 App. 1st Cir.1983), reversed on other grounds, 439 So.2d 388 (La.1983). We hold the roadway was unreasonably dangerous and the police jury was negligent in failing to post warnings of the condition, or to remedy those that could be remedied.
The question remains as to whether the negligence of the police jury was the sole cause of the accident, or whether the conduct of Bradley Ryan contributed thereto. If it did plaintiff cannot recover since at the time of the accident contributory negligence barred all recovery. Defendant's claim of contributory negligence is based on Bradley Ryan's blood alcohol being .24 at the time of his death, sufficient to consider him legally intoxicated. Plaintiff attacks the blood sample based on insufficiency of proof to determine the blood sample was Ryan's, and if it was, whether it was properly taken.

CHAIN OF EVIDENCE
Plaintiff argues that the chain of custody of decedent's blood sample was defective. The trial court agreed. We do not find the chain of evidence deficient.
The deposition of Dr. Edwin Walker, M.D., Parish Coroner, was admitted as evidence. Shortly after decedent was brought to the hospital on the morning of December 11, 1978, Dr. Walker obtained a blood sample from decedent's body and placed the vials containing his blood into a post-mortem alcohol kit. He filled out the furnished labels with decedent's name, Dr. Walker's initials and the time and date. The labels were then used to seal both ends of the styrofoam box. Bobby Hunt, R.N., testified that he observed Dr. Walker draw the blood, label and seal the kit. Dr. Walker handed the kit to Mr. Hunt who placed it on his desk in the emergency room where it was picked up by a Deputy Sheriff. Former Deputy Sheriff Lance Radley testified that he received the styrofoam kit from Mr. Hunt, intialed it, brought it to the Sheriff's Office where he handed it to Deputy Ronnie Stewart. Deputy Ronnie Stewart testified that he routinely received blood sample kits and refrigerated them until the kits were transported to the State Police Crime Laboratory for analysis. Hollis B. Haley, Detective for the Livingston Parish Sheriff's Office testified that he delivered the sample kit to Glen Singletary at the State Police Crime Laboratory on December 15, 1978. Glen Singletary, Forensic Scientist employed by the State Police Crime Laboratory, testified that on December 15,1978, he received the sample from Deputy Haley at the laboratory. He initialed it and put the sealed kit away for safekeeping until the test could be performed. Mr. Singletary broke the seal and performed the test on December 22, 1978.
After reviewing the evidence relative to the chain of custody we find that an adequate chain of custody was established and the results of the blood alcohol test should properly be considered as evidence.

THE BLOOD SAMPLE
A blood sample was obtained from the decedent by Dr. Edwin Walker, M.D., Parish Coroner. The sample was obtained by the insertion of a needle into the chest wall. The cause of death was listed as head injuries. No autopsy was performed. It was Dr. Walker's opinion that since there were no visible signs of chest injury on decedent the blood sample was valid. The results of the blood alcohol test indicated that decedent's blood alcohol level was .24. Dr. Monroe Samuels, M.D., board certified in clinical, anatomic and forensic pathology offered conflicting testimony relative to the validity of the blood sample. He testified that where the possibility of either chest or abdominal trauma exists, an uncontaminated sample can only be obtained by direct visualization of the sample site.
Both Mr. Vicknair and Mr. Fournet testified that they did not know how many beers Bradley Ryan consumed at the party because they were playing cards in another room. However, they admitted that he did drink several beers. The testimony was uncontradicted that no alcohol was consumed at the party after 11:30 p.m. Ryan, Fournet and Vicknair played Password from 11:30 p.m. until approximately 2:15 *114 a.m. They talked for a few minutes and then Bradley Ryan drove away. He did not appear to be intoxicated, his speech was not slurred and his senses did not appear to be impaired. The accident occurred at 3:05 a.m.
Deputy Lance Radley was summoned to the scene and upon investigation of the accident observed two empty beer cans and several full cans of beer in Ryan's car.
The factual evidence of the vents that occurred prior to the accident are conclusive that Bradley Ryan consumed alcohol during the party he atteded. The party took place between 7:00 p.m. and 2:15 a.m. The evidence also indicates the probability that he consumed alcohol between the time he left the party and the time of the accident. He obviously stopped somewhere since he left the party prior to Fournet, but was behind Fournet when the accident happened. The presence of beer in the car, some of which had been consumed, supports this conclusion.
The physical facts leave no doubt that Ryan had consumed alcohol. The only question is how much. The blood sample indicates an amount in the blood stream that would result in a blood alcohol reading of .24. The doctor who actually took the sample testified that in his opinion the sample was valid. He based this opinion on his own observations as to the location of the injuries, and to his belief from what he observed that the procedures he used to obtain the blood sample were correct. The contrary opinion is not based on observation or proven facts, but on supposition. Under these circumstances greater weight must go to the testimony of the doctor who took the sample.
We find that the blood sample was valid and that decedent was legally intoxicated at the time of the accident.

CONTRIBUTORY NEGLIGENCE
A defendant who pleads the affirmative defense of contributory negligence bears the burden of proving it. La.C.C.P. art. 1005; McInnis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La.1975). Here, the contributory negligence of the decedent rests upon defendant proving by a preponderance of the evidence that the decedent was unable to drive properly because he was intoxicated or because he had ingested enough alcohol to materially impair his faculties. Jones v. Continental Casualty Co. of Chicago, Illinois, 246 La. 921, 169 So.2d 50 (1964); Sanders v. Eilers, 217 So.2d 205 (La.App. 1st Cir. 1968). In addition, defendant must prove that decedent's consumption of alcohol was a substantial factor in causing the accident.
Defendant contends that in the early morning hours of December 11, 1978, Bradley Ryan was driving while intoxicated or driving while his faculties were materially impaired by alcohol thus resulting in his inability to negotiate the curve on Burgess Road.
The state or its political subdivisions has the duty to maintain reasonably safe highways for drivers exercising ordinary care and reasonable prudence. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Murphy v. Louisiana Department of Transportation and Development, 424 So.2d 344 (La.App. 1st Cir.1982). They cannot be required to maintain the highway in a condition that will be safe for drivers who cannot exercise ordinary care and reasonable prudence. This case is thus distinguishable from Vervik v. State, Department of Highways, 302 So.2d 895 (La.1974). In Vervik the driver, unfamiliar with the highway entered and failed to negotiate a sharp, unmarked curve. He was held not contributorily negligent. There was no evidence that the driver was intoxicated or that he failed to drive in a reasonably prudent manner. In the case before us the evidence indicates that Ryan may have strayed to the shoulder before entering the curve and was driving while legally intoxicated. In addition Ryan was familiar with the dangerous and defective condition of Burgess Road. He had resided with Fournet for at least one week and had driven on this roadway at least ten times prior to the night in which the accident occurred. Both *115 Fournet and Ryan were travelling at 35 miles per hour. Fournet negotiated the curve without incident, whereas Ryan, unfortunately, did not.
William J. George, Ph.D., pharmacologist and toxicologist, testified relative to the effects of alcohol ingestion on the human mind and body. He stated that a person with a blood alcohol level of .15 or above is at much greater risk of becoming involved in an automobile fatality than a person who has not been drinking, nor would he be as capable of handling a vehicle as a person who has not ingested alcohol. In addition, a blood alcohol level of .15 and above would be a substantial factor in a driver's failure to maintain his car on the road. He further stated that some persons with blood alcohol levels as high as .24 may not appear to be intoxicated to other persons, however, some persons appear to be intoxicated at much lower blood alcohol levels.
Upon review of the evidence we cannot say that the defective condition of the roadway was the sole cause of the accident. Accordingly, we reverse that portion of the trial court's judgment and hold that the decedent's negligence contributed significantly to the accident which resulted in his death.
Since we have held that decedent was contributorily negligent we need not address the remaining assignments of error. Appellant is to pay all costs of this proceeding.
REVERSED AND RENDERED.

ON REHEARING
The original decree is amended on rehearing to assess costs to appellee.