CRAIN, Judge.
These consolidated wrongful death cases arise out of a two car, head on collision. The collision occurred when the intoxicated driver of one car, failed to negotiate a curve, struck the other car, and killed two of its occupants. These suits were brought by the surviving wives and children. At issue is whether the State Department of Highways contributed to the accident by failing to properly design, construct and maintain the roadway, or warn of its alleged hazards. The trial court found that the drunk driver, defendant Robert C. Bar-bee, was the sole legal cause of the collision. Plaintiffs appeal, alleging the trial court erred in not finding the DOTD liable. We affirm.
FACTS
On September 8,1981, at about 6:15 a.m., Nolan Abadie and Michael Landry, along with two other passengers, were commuting to work in Abadie’s 1974 Ford maverick. The weather was clear and the sun had risen. They were travelling south on Louisiana Highway 308, a two-lane, blacktop highway with a posted speed limit of 55 m.p.h. About one mile south of the St. Charles Bridge, near milepost 41.3, they encountered Barbee travelling north.
Barbee was driving a 1979 Ford Thunderbird owned by Henry Fickling, III. Fickling was passed out in the front seat.[1] Barbee was travelling at about 45 m.p.h. Near the end of a long moderate curve to his right, Barbee crossed the center line and struck the driver’s side of the Abadie car at about a 10 to 20° angle. The Abadie car spun off the road and into some shrubbery along the shoulder. Abadie died in route to the hospital. Landry was sitting behind Abadie on the driver’s side. He was ejected through the rear window and killed instantly. Barbee and Fickling suffered minor injuries,[2]
About two hours later, Barbee registered .11 on a photoelectric intoximeter test. Testimony at trial indicated that Bar-bee’s blood alcohol level was approximately .142 at the time of the wreck.[3] Earlier, Barbee received a ticket for speeding on the Lake Ponchartrain Causeway Bridge. He was not checked for intoxication. He though he was “heading home” to Thibo-daux after going out in New Orleans. *169 When Barbee received the ticket, he realized for the first time that he was on the causeway bridge. He was supposed to be on Highway 90, headed east to Thibodaux. He eventually got directions to Thibodaux and wound up on La. 308, where the collision occurred.
ISSUES
Plaintiffs present several theories to support their contention that defects in the highway contributed to the accident. They claim that the shoulder was poorly constructed and maintained, and did not afford Abadie a safe means to avoid the collision; that the lack of curve warning signs contributed to Barbee’s failure to negotiate the curve; that the highway lane widths were too narrow; and that the curve did not have a proper super-elevation to keep cars within the lane.

The Highway Shoulder

Plaintiffs contend that because of the shoulder’s defective design, Abadie did not try to avoid the collision by swerving to his right and onto the shoulder. They argue that the shoulder was well below minimum design standards; that it was narrow and there was a foreslope or steep downward slope to the shoulder that ended in heavy undergrowth and vegetation, making it unsafe to use; and that faced with the choice of staying on the road or swerving onto the shoulder, Abadie decided to take his chances and attempt to avoid the collision by staying in his lane. They contend that had the shoulder met even minimum design standards, Abadie would have chosen to use it, and the accident would have been avoided. Therefore, it was important at trial to determine how much, if at all, Aba-die swerved. And how much time he had to decide.
The trial judge, in his role as fact finder, resolved these questions adversely to plaintiffs. He found that Abadie did not have sufficient time to safely react and avoid the accident and that the condition of the shoulder did not matter.
We have carefully reviewed the record and the evidence, and find that this factual determination is reasonably supported and not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). One eyewitness claimed that Barbee had crossed completely into the Abadie’s lane for two or three seconds before the impact. However, his testimony was contradicted in part by physical evidence showing the collision occurred only a few feet over the center line. Also, there was testimony that Abadie did try to swerve to the right, but everything happened too quickly to avoid impact.
“Determination of cause in fact is the first step in determining liability under the duty risk analysis”. Fernandez v. General Motors Corp., et al, 491 So.2d 633 (La.1986). Accordingly, whether the shoulder was defective and presented an unreasonable risk of harm is immaterial. The trial court determined that Abadie did not have time to either use the shoulder or decide to use it — hazardous or not. Thus, under these findings, any alleged defects could not have been a cause in fact of the accident.

Warning Signs

At the time of the wreck, there were no curve warning signs or “Chevron” curve delineators on this section of La. 308. Approximately 3 months prior to the wreck, the DOTD had completed a study which recommended the installation of “Chevron [curve] alignment” signs. However, the signs were not erected until January 1982.
In certain circumstances, the state does have a duty to post signs. Where unreasonably dangerous conditions exist along a road, the state is responsible for correcting them or posting adequate warning of their presence. Ryan v. State, 477 So.2d 110 (La.App. 1st Cir.1985).
The trial judge found that the absence of Chevron alignment signs did not contribute to Barbee’s failure to negotiate the curve. The evidence shows that Chevron markers are primarily used to alert drivers to the presence of a curve, particularly at night, *170 when there are less visual cues available for a driver to pick up. They are not normally used in place of curve warning signs, which tell a driver to reduce speed. The DOTD had determined that the curve could be safely negotiated at 55 m.p.h., therefore, it did not place any curve warning signs.
This collision took place in daylight near the end of a long curve. The trial judge found that by the time Barbee reached the end of the curve, he knew or should have known that he was in it, therefore, the presence of Chevron alignment markers at the beginning of the curve would not have aided him by informing him of the presence of the curve.
The absence of signs would have to be a cause in fact of the injury before any liability could attach. Duffy v. State, Dept. of Transp., etc., 415 So.2d 375 (La.App. 1st Cir.1982). Causation is a question of fact. See Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985). We have carefully reviewed the record and the trial court’s well-reasoned written reasons for judgment. They are reasonably supported and we do not find manifest error.

The Curve

Lastly, plaintiffs contend that the curve itself presented an unreasonable risk of harm, and contributed to the collision. They contend that the curve was poorly designed and constructed. Specifically, they allege that the super-elevation of the curve was dangerously low; the lane widths were too narrow; and that the radius of the curve was not uniform, causing the curve to dangerously tighten at a critical point. They also allege that these conditions, along with the previously mentioned lack of signing and the substandard shoulders, all combined to contribute to Barbee’s failure to negotiate the curve.
Super-elevation is the upward banking or sloping of a curve that helps a car negotiate the curve by counteracting the centrifugal force or sideways pull a car experiences as it turns. Generally, the greater the super-elevation or banking, the faster or easier a car can negotiate a given curve.
In 1977, the DOTD resurfaced the pertinent portions of La. 308. Evidence introduced at trial showed that the overlay was not built to the DOTD’s specifications. Although the degree of super-elevation was below design standards, the trial judge specifically noted the uncontradicted testimony of the DOTD’s expert witness that the lateral coefficient of friction of the highway more than compensated for the deficient super-elevation-ratio.
The coefficient of friction refers to the adhesive quality of the surface of a roadway. This quality varies from road surface to road surface. The higher this adhesive factor, the less super-elevation needed to keep a vehicle in a given curve. The DOTD’s expert testified that the side friction was excellent, and that despite the substandard super-elevation, a driver under control of his vehicle could “easily ... traverse this curve at fifty-five miles an hour and probably ... much higher.”
The trial judge apparently accepted this testimony as well as the testimony of an eye-witness in determining that these and other factors did not create an unreasonable risk of harm to the deceased. The eye-witness testified that he was following Barbee for some time, and that Barbee was weaving in and out of both lanes and occasionally on and off the road.
Under these circumstances, the crux of the issue was not whether these factors contributed to Barbee’s crossing over, but whether they combined to present an unreasonable risk of injury. See Efferson v. State, Through Dept. of T. & Dev., 463 So.2d 1342 (La.App. 1st Cir.1984). The DOTD is not responsible for every accident on its highways, nor does it insure against all injuries resulting from highway defects. Broussard v. Yellow Freight Lines, Inc., 464 So.2d 987 (La.App. 1st Cir.1985). The DOTD’s duty is to maintain the state’s highways in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Even the failure to meet the requirements of the DOTD’s design manual *171 does not constitute negligence per se. Broussard v. Yellow Freight Lines, Inc., 464 So.2d at 991. The trial court did not find an unreasonable risk of injury. Plaintiffs’ experts testified that the condition of the curve probably contributed to the collision. However, there is no substantial testimony that the curve was unreasonably dangerous. All roads and curves could be designed better. Although the curve could have been better designed and constructed, plaintiffs failed to carry their burden of proof that the DOTD did not construct and maintain the curve in a reasonably safe condition.
Nor is there an adequate basis in the record to show that Barbee would have safely negotiated a better designed and constructed curve. Barbee had been drinking all night. He was obviously tired, sleepy and drunk. He was unable to negotiate a curve that could safely be made at speeds up to twenty miles per hour faster than he was going at the time. He was weaving all over the road just before the wreck. The trial court found that had the curve been better designed and built, the probabilities are that Barbee would still have failed to negotiate it. The trial court specifically found that the sole cause of the accident was the “gross negligence” of Barbee. We do not find any error in the trial court’s ruling.
DECREE
Accordingly, the judgment of the trial court is affirmed. Appellants are cast for costs.
AFFIRMED.

.Fickling was dismissed from the suit after his insurance company deposited $10,000 in the registry of the court. Barbee was adjudicated a bankrupt in federal court prior to trial.

. Fickling and Barbee were wearing their seat-belts. Neither Abadie nor Landry wore theirs.

. .10 is the legal standard for a presumption of intoxication.