520 So.2d 813 (1987)
Joseph L. DOUGET, et al., Plaintiffs-Appellees,
v.
ALLEN PARISH POLICE JURY, et al., Defendants-Appellants.
No. 86-1008.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*814 Young & Burson, M. Terrance Hoychick, Eunice, for plaintiffs-appellees.
Camp, Carmouche, Barsh, Gray, Hoffman & Gill, David R. Frohn, Lake Charles, for defendants-appellants.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KNOLL, Judge.
The Allen Parish Police Jury and its insurer, National Union Fire Insurance Company of Pittsburgh (hereafter Allen Parish), appeal an adverse judgment declaring them liable to the father of Carl Lee Douget for Douget's death caused by a faulty parish road. The trial judge found the condition of the road coupled with the lack of curve warning and speed limit signs made it hazardous; that Douget's intoxication, if any, was not the cause in fact of the accident; and that because of Douget's inattentiveness, the $125,000 award for loss of love and affection was reduced by 20%. Allen Parish appeals, contending the trial court erred: 1) in finding Allen Parish at fault; 2) in failing to find Douget grossly negligent; 3) in finding the blood alcohol test results erroneous; and 4) in its assessment of damages. Douget's father answered the appeal contending the trial court erred in finding comparative fault.

FACTS
Carl Douget was killed instantly on August 15, 1984, at approximately midnight, when his 1981 Datsun pickup truck left the road in a curve on Allen Parish Road 19 near Oberlin. Douget was headed west when he lost control in the second part of an "S" curve. The road curved right and the truck entered the ditch on the left side, turning over on its side and crushing Douget's head and chest. Two passengers, Keith Bergeron and Tim Manuel, were not seriously injured.
Parish Road 19 was surfaced with knockdown asphalt, a liquid mixed with the road base soil, and in the curve in question a soft portion of the road was covered with loose gravel. There were no curve warning signs in place and no advisory speed signs.

PARISH LIABILITY
Allen Parish contends it had no actual or constructive knowledge of the roadway condition prior to the accident, and that the roadway was not unreasonably dangerous.
The trial court concluded that the lack of warning signs and a curve advisory together with the soft and mushy road surface made the road unreasonably dangerous.
Allen Parish argues that we should apply LSA-R.S. 9:2800 retroactively to preclude liability because it neither had actual nor constructive notice of the danger of the road in question. We need not decide whether R.S. 9:2800, enacted in 1985, should be applied retroactively. The facts clearly indicate that: 1) the parish work crew did repair work in the curve just two days prior to the accident; and 2) even despite regular road inspections, the parish failed to replace curve advisory signs removed by vandals 7 years before. This coupled with the testimony of neighboring *815 residents that they regularly helped people out of the ditch in the curve in question, showed that the police jury had actual notice of the road condition.
Allen Parish next argues briefly that the trial court erred in finding the road defective.
Under LSA-R.S. 32:235(B) the police jury is responsible for placing and maintaining traffic signs and controls within its jurisdiction. Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La.App. 3rd Cir. 1985), writs denied, 478 So.2d 1236, 1238 (La.1985). Because of this responsibility the police jury has the legal duty to erect warning signs sufficient to warn motorists of hazardous conditions. Dabov v. Allstate Insurance Company, 302 So.2d 697 (La. App. 3rd Cir.1974), writs refused, 305 So.2d 539, 540 (La.1975). The failure to so warn would subject the parish to liability for damages resulting from the breach of that duty.
The road surface in the case sub judice was described as soft and mushy, with loose gravel in the curve. One person who was at the scene immediately after the accident said he sank to his ankles. Likewise, it is uncontested that no curve signs were erected, despite the experts' testimony that the maximum recommended speed was between 20 and 25 miles per hour.
Considering the record we cannot find that the trial court was manifestly erroneous in determining that the road was defective.

CAUSATION
Allen Parish contends that the cause in fact of the accident was Douget's inattentiveness and drunkenness. It argues that since the accident occurred at a slow speed, Douget should have seen the curve where he drove off.
The trial court's determination of causation is a question of fact and its conclusion is entitled to great weight. Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La. App. 3rd Cir.1984), writs denied, 457 So.2d 1195, 1198 (La.1984).
The evidence preponderates that Douget's truck entered the curve at a speed of 35-45 m.p.h. and that it entered the ditch traveling at approximately 25 m.p.h. The ruts in the road indicated to Dwaine Evans, Douget's expert in road design, that Douget's truck was sliding when it entered the ditch. One of the truck passengers stated that Douget attempted to keep the truck on the road but could not.
The major attack on the question of causation is Allen Parish's assertion that Douget's intoxication caused him to lose control in the curve. The impetus for its assertion is that a blood sample taken from Douget's body by the coroner, Dr. James L. Lowry, showed he had a .32 percent blood alcohol level.
Douget attacked the validity of the blood test results through the testimony of Dr. George McCormick, a forensic pathologist. Dr. McCormick opined that the test results were artificially high for two reasons. First, the blood sample was taken from the jugular vein which was contaminated with alcohol from Douget's crushed abdominal or chest cavity. In this regard Allen Parish asserts that this argument was espoused and rejected in Ryan v. State of Louisiana, 477 So.2d 110 (La.App. 1st Cir. 1985), writ denied, 478 So.2d 136 (La.1985). We disagree. Ryan is factually distinguishable. In Ryan it was not established that the decedent had either a crushed chest or abdominal cavity. In the case sub judice the medical evidence specifically concludes that Douget died of crushing injuries to his chest and head. Accordingly, the findings of Dr. McCormick cannot be disregarded on the force of the results in Ryan.
Secondly, the Becton/Dickenson tube (the sodium chloride container in which the blood is drawn, commonly called the B/D tube) was expired. The expiration date on the tube was 11-1-83; the blood was withdrawn August of 84. The manufacturer informed Dr. McCormick that they did not know the affects of using an expired B/D tube; however, Dr. McCormick, who is the coroner for Bossier Parish, performs autopsies for 40 of the 64 parishes during most *816 of the year. It was his experience that in a very large number of cases he finds ethanol levels in the B/D tubes which have expired dates in cases that he does not expect to find ethanol at all. Therefore, he opined that the expired B/D tube contributed to the artificially high blood alcohol test result.
The trial court concluded the blood tests were not believable. For the following reasons we conclude that the trial court's conclusion in this regard is not manifestly erroneous. The testimony preponderates that between 10:00 a.m. and 7:00 p.m. on the day of the accident Douget and the two other occupants of the pickup truck drank three eight packs of seven ounce beer and three glasses of draft beer. The medical evidence, including the testimony regarding the rate of ingestion needed to attain a .32 result, fully supports the trial court's conclusion of this fact.
Therefore we find no support in the record for Allen Parish's argument that there was an intervening cause, other than the defective road, for the accident.

QUANTUM/DEGREE OF DOUGET'S FAULT
Allen Parish contends the trial court's award of $125,000 for loss of love and affection is excessive. Before a damage award may be questioned as inadequate or excessive, the appellate court must look to the individual circumstances of the particular case to determine whether the award for the injuries and their effect on the injured person were a clear abuse of the trier of fact's great discretion. Bordelon v. Southern La. Health Care Corp., 467 So.2d 167 (La.App. 3rd Cir, 1985), writ denied, 469 So.2d 989 (La.1985).
At the time of his death Carl Douget was twenty-two years of age and was living at home with his father. He was engaged to be married. Commenting on the basis for its damage award, the trial court stated, "The court is impressed with plaintiff's sincerity and with the degree of love and affection that existed between him and his son. The son's death was even more destructive due to the plaintiff's loss of his wife just over two (2) years prior." After thoroughly reviewing the record, we find no abuse of discretion in the trial court's damage award. See Johnson v. Folse, 438 So.2d 1137 (La.App. 1st Cir. 1983).
Although the trial court awarded Douget's father $125,000 damages, Douget's award was reduced by 20% because of comparative fault. In his answer to this appeal he contends that the assessment of 20% comparative fault is not supported by the record.
Comparative fault requires the allocation of a percentage of fault to the responsible parties. In making this allocation of fault, we must consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985). In a case where the fault of a governing body responsible for warning travelers against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. Ledbetter v. State Dept. of Transp. & Dev., 482 So.2d 1035 (La.App. 3rd Cir.1986), affirmed, 502 So.2d 1383 (La.1987).
The trial court stated, "[T]he court believes driver negligence or inattentiveness played a part in the accident. While Douget was unfamiliar with this particular road, he obviously was familiar with rural roads in general, having been reared in a rural area. The court is of the opinion he should have been more attentive driving on a country road with which he was unfamiliar." The record preponderates that Carl Douget failed to see what he should have seen and therefore breached the driver's fundamental duty to maintain a proper lookout. Based on the factors delineated in Watson and the record before us, we cannot say the trial court abused its discretion in assessing 20% fault to Douget.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Allen Parish and *817 National Union Fire Insurance of Pittsburgh.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.