CIACCIO, Judge.
Mrs. Rose Gaston Bush died from injuries she received when her stalled car was rear-ended by a pickup truck on the Dwyer Road overpass of Interstate 10 West. Shortly before sunrise when the sky was still dark, Mrs. Bush, alone in her car, was travelling to work. When the collision occurred, Mrs. Bush’s car was stopped in the right-hand lane of traffic just beyond the crest of the overpass.
Mr. Frank Tanguis, approaching in the right-hand lane at about 60 m.p.h., noticed the cars ahead of him braking and changing lanes. When he first saw Mrs. Bush’s car, he did not realize that it was stopped. When he did realize that her car was not moving, he slowed his car almost to a stop, changed lanes, proceeded slowly past the stopped car, and changed back into the right-hand lane to proceed slowly down the overpass. As he passed the stopped car he saw Mrs. Bush leaning forward with her hand on the ignition switch apparently trying to restart her car.
Mr. Anthony Pohlman was also travel-ling in the right-hand lane at about 50 m.p.h., somewhere behind Mrs. Bush and Mr. Tanguis. Mr. Pohlman did not see Mrs. Bush’s car until the car in front of him (which the trial judge found to be Mr. Tanguis’s car) changed lanes to go around the stopped car. Mr. Pohlman did not brake or slow down, but looking left and right attempted to “finesse” his way around Mrs. Bush’s car. When he looked left he saw oncoming traffic in the middle lane which he felt was too close to allow him to change lanes safely. When he looked right there was no place to go because the overpass does not have an emergency lane or shoulder. Then looking forward, with still no chance to change lanes, he hit the rear of Mrs. Bush's car travel-ling at the moment of impact approximately 49 m.p.h., braking only at the moment of impact while simultaneously turning his pickup truck to the right toward the railing on the edge of the overpass.
Looking in his rear-view mirror while travelling slowly down the overpass, Mr. Tanguis observed the collision. He testified that when he proceeded slowly around Mrs. Bush’s stopped car, behind him there were no cars near. He also testified that just prior to and at the moment of impact there was no traffic in the middle lane to prevent Mr. Pohlman from changing lanes.
Mrs. Bush’s husband and children sued the Louisiana Department of Transportation and Development (DOTD) and the City of New Orleans. The DOTD third partied the Estate of Rose Bush and her insurer, and Anthony L. Pohlman and his insurer. Pohlman filed a reconventional demand against the DOTD and a cross claim against the City of New Orleans. Prior to trial plaintiffs dismissed their claims against the City of New Orleans, and the DOTD dismissed its third party demand for contribution against Pohlman as Pohlman had settled with plaintiffs and had obtained a full release.
Finding Mr3. Bush free from fault, the trial judge found Mr. Pohlman ⅜ at fault and DOTD Vs at fault for the accident, and he rendered judgment against DOTD for ½ of both plaintiffs’ damages and Mr. Pohl-man’s damages.
DOTD appealed suspensively. Our review reveals that the record does not support a finding of fault by DOTD. We, therefore, reverse the judgment insofar as it assesses liability against DOTD.
Plaintiffs and the trial judge predicate the fault of DOTD upon the roadway not having an emergency lane or shoulder. The trial judge gave the following reasons for his finding of fault by DOTD.
FAULT OF THE STATE OF LOUISIANA
The State of Louisiana Department of Transportation and Development has the obligation to maintain the highway system of this state. It is charged with the duty to maintain those roads in a reasonably safe condition for use by motorists.
The site of this collision is the Interstate 10 highway in eastern New Orleans *723 on an elevated roadway over Dwyer Road (the Dwyer Road overpass). Current highway design standards mandate an emergency lane on such roadways. No such standards were promulgated when the Dwyer overpass was designed, but were issued about the time that section of roadway was opened for use by the public.
A highway without a shoulder or one which never permits deviation from the main traffic lanes has been held “ intolerably unsafe ...” by our highest court. LeBlanc v. State of Louisiana, Department of Highways, 419 So.2d 853 (La.1982). The DOTD has a duty to use all reasonable means to protect the motoring public from injury caused by unsafe conditions.
Testimony was elicited from plaintiffs expert, Andrew Ramisch, that “restrip-ing” of the roadway at the accident site could be accomplished to provide three lanes of travel with a six foot wide “emergency” lane on the right side of the roadway. His estimate of the costs of that operation was between $10,000 and $12,000.
The DOTD had knowledge of the dangerous condition and the unreasonable risk of harm to motorists and failed to act to remedy the condition or remove the risk of harm posed by the unsafe condition.
The fault of the State of Louisiana DOTD is fixed by this Court at 33V3%.
That analysis is flawed: reliance upon LeBlanc v. State, 419 So.2d 853 (La.1982), is misplaced for the proposition that any section of roadway without a shoulder wide enough to serve as an emergency lane is unsafe; and, except for the misplaced reliance upon LeBlanc, there is no reasoning to support a conclusion that the roadway was unreasonably dangerous.
La.R.S. 48:21 imposes a duty upon DOTD to improve, maintain, repair and regulate Louisiana’s public roads and highways. DOTD has a duty to maintain the roads and highways in a reasonably safe condition for a reasonably prudent driver. LeBlanc v. State, above. DOTD is not responsible for every accident occurring on state highways; it is neither the guarantor of the safety of all motorists on the road nor an insurer against any and all injury which may result from defects in the roads or highways. The duty to maintain reasonably safe highways extends to the protection of those people who may be foresee-ably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.1988), writ denied, 533 So.2d 22 (La.1988). This duty is the same under either strict liability or negligence. See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). Failure to meet accepted designs standards, even the requirements of DOTD’s design manual, does not constitute per se a breach of duty. See Landry v. Fickling, 498 So.2d 167, 170-171 (La.App. 1st Cir.1986); Broussard v. Yellow Freight Lines, Inc., 464 So.2d 987, 991 (La.App. 1st Cir.1985); Harkins v. State, Department of Highways, 247 So.2d 644, 648 (La.App.3d Cir.1971), writ denied, 259 La. 741, 252 So.2d 449 (1971). The failure of DOTD to reconstruct the State’s highways to meet modem standards does not establish the existence of a hazardous defect. Whether DOTD has breached its duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition, will depend upon the particular facts and circumstances of each case. Manosco v. Poplus, 530 So.2d 548 (La.1988); Myers v. State Farm Mut. Auto Ins. Co., 493 So.2d 1170 (La.1986).
The elements which establish delictual liability are fault, causation and damage. Fault flows from the breach of a duly designed to protect this particular plaintiff from this particular harm. As set out above, the duty of DOTD in this case is to keep Louisiana’s public roads and highways in reasonably safe condition for a reasonably prudent driver; that is to keep the roadways in a condition that is not unreasonably dangerous for the reasonably prudent driver.
The record before us does not establish that the Interstate 10 West Dwyer *724 Road overpass is unreasonably dangerous. What the record establishes is that the roadway could have been safer; the experts agree that if the roadway had a right-hand shoulder or emergency lane, then it would be a safer roadway. That the roadway could be made safer, however, does not establish that it is unreasonably dangerous.
The duty which DOTD must fulfill to avoid delictual responsibility is not to provide the safest roadways possible; DOTD is not a guarantor of safety or an insurer against any and all injuries. The roadways need not be free from any imperfection and all risks of danger. Driving is dangerous, even on perfect roadways.
To avoid delictual responsibility DOTD must provide roadways which are reasonably safe to a reasonably prudent driver. Plaintiffs introduced statistics to show the annual number of accidents which had occurred in approximately the same location as this accident over the six years proceeding this accident: in 1977 there were 13 accidents, 46% rear-end; 1978, 21, 23% rear-end; 1979, 10, 70% rear-end; 1980, 14, 43% rear-end; 1981, 12, 33% rear-end; 1982, 8, 25% rear-end. These statistics are flawed for the purpose offered because they were compiled using only mile post markers as a reference and so include traffic in both directions, on intersecting streets and on access ramps, not just that point on the Dwyer Road overpass where this accident occurred. Further, they do not indicate whether the rear-end collisions involved stalled cars. Nevertheless, even accepting the statistics at face value, they establish little. Every day tens of thousands of vehicles travel this section of roadway, millions every year. Almost all of those drivers negotiate this roadway safely. While we do not suggest that any statistic will or will not establish dangerousness, these statistics establish that for driving purposes the roadway is safe.
That vehicles travelling the roadway may become stalled or disabled is a foreseeable occurrence, and therefore, the risks and dangers involved are encompassed within DOTD's duty to provide reasonably safe roadways. That is, DOTD should provide roadways that are reasonably safe considering that vehicles occasionally stall or become disabled. This does not mean, however, that to satisfy this duty DOTD must provide roadways which at any point have immediately accessible, perfectly safe havens for stalled or disabled vehicles. The duty is to provide reasonable safety, not absolute safety.
When the Dwyer Road overpass was designed and constructed it met all prevailing standards for safety. The standards changed, and now there is greater recognition of the safety advantages of shoulders or emergency lanes. But, DOTD is not required continually to reconstruct the State's highways to satisfy changing modem standards, and just because modern standards are considered safer does not mean that earlier standards were unreasonably dangerous or that a failure to reconstruct constitutes fault. Most roads could be designed better. Evidence of safer designs, however, does not alone carry plaintiffs burden to prove that the roadway is unreasonably dangerous. See, e.g., Landry v. Fickling, above, 498 So.2d at 171.
Reliance upon LeBlanc v. State, above, is misplaced for the proposition that any roadway without a shoulder is “intolerably unsafe.” The comment to that effect is dictum because the roadway in LeBlanc had a shoulder, and the court was concerned with whether that shoulder was safe to allow a travelling vehicle to deviate from the travelled portion of that roadway. LeBlanc did not hold that all roadways, to be reasonably safe, must have shoulders as safe havens for stalled vehicles or emergency lanes to permit unrestricted circumnavigation of vehicles stalled on the travel portion of the roadway.
The record does not establish that the Dwyer Road overpass was unreasonably dangerous or that it became so for Mrs. Bush and Mr. Pohlman because there was no right-hand shoulder or emergency lane. The record does not establish that DOTD breached its duty. DOTD was not at fault.
Even if we were convinced that the Dwyer Road overpass needed a shoulder or *725 emergency lane to be reasonably safe, causation in this case is speculative. Evidence that the presence of a shoulder or emergency lane might arguably have helped to prevent the accident does not alone support the logically different conclusion that the absence of an emergency lane caused the accident. There is not a preponderance of evidence and we can, at best, only speculate whether Mrs. Bush could have and would have used a shoulder as a haven for her stalled car or that Mr. Pohlman could have and would have used an emergency lane to go around Mrs. Bush’s stalled car.
The fault which caused plaintiffs’ damages was Mr. Pohlman’s. The trial judge found as follows:
FAULT OF ANTHONY POHLMAN
Anthony Pohlman was traveling in the right hand lane of the I — 10 immediately before the collision. He had a duty to maintain control of his vehicle adequately under the circumstances in which he was driving. His duty to maintain adequate vigilance requires him to do all reasonable things within his power to avoid a collision. Mr. Pohlman’s testimony regarding his inability to swerve left to avoid the stalled Opel is not impressive. His testimony reveals that he looked to his left, then to his right and then left again before applying his brakes.
Testimony of the investigators at the scene showed that there were no skid marks left by the Pohlman truck. He applied his brakes only at the point of impact. He could have and indeed should have seen the stalled car sufficiently far ahead of his truck to change lanes of travel, or to slow or stop his vehicle prior to the impact.
This Court specifically rejects his testimony to the effect that his vision of the stalled car was totally obscured by a Honda Accord traveling ahead of him until that vehicle moved from the right to the center lane of travel. The driver of a pickup truck is seated higher than a driver of a car. Mr. Pohlman would be able to see over a small car traveling ahead of his pickup truck and therefore should have seen the stalled car before the Honda changed lanes.
Furthermore, there was testimony from Frank Tanguis, an eyewitness not otherwise involved in this incident, to the effect that there was no traffic in the center lane near the point of impact at the time of the collision.
Officer Tafaro, who investigated the accident, testified that he later established that Mr. Pohlman could have seen the stalled car from more than five hundred feet away.
The conclusion is inescapable that Mr. Pohlman failed to maintain proper vigilance. Had he done so, he would have seen the stalled car and could have either changed lanes to avoid it, as did Mr. Tanguis, (who admitted travelling 60 mph at the time) or stopped his truck before the impact.
The fault of Anthony Pohlman is fixed by this Court at 66%%.
The record as a whole supports these factual conclusions. No one has challenged the trial judge’s conclusion that Mrs. Bush was free from fault. We have found that DOTD was free from fault. No other sources of fault having been raised, the entirety of fault falls upon Mr. Pohlman.
We, therefore, reverse the judgment against DOTD for Vs of plaintiffs’ damages and dismiss plaintiffs’ suit against DOTD. We also reverse the judgment against DOTD for ⅛ of Mr. Pohlman’s damages and dismiss his reconventional demand against DOTD.
All costs of these proceedings are to be shared equally between plaintiffs and Anthony L. Pohlman.
REVERSED.