419 So.2d 853 (1982)
Alma LeBLANC
v.
STATE of Louisiana and the Louisiana Department of Highways.
No. 81-C-3239.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*854 Larry A. Roach, Lake Charles, for applicant.
Marshall W. Wroten, Robert J. Jones, David K. Balfour, John W. King, Baton Rouge, for respondent.
DENNIS, Justice.
In this case we consider whether the plaintiff motorist's inattention in allowing her vehicle to stray from the roadway onto a dangerously low shoulder followed instinctively by her immediate swerve back onto the elevated road surface precludes her recovery from the Department of Highways for injuries sustained in a resulting accident. The trial court found that the four to six inch dropoff between the roadway and the shoulder was the principal cause of the accident and held for the plaintiff motorist. The appeals court reversed, however, on the ground that the plaintiff's failure to stabilize her vehicle after its two right wheels dropped to the shoulder constituted deficient conduct and thus barred her recovery. We reverse. The Department's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp dropoff from the roadway and her consequent instinctive oversteering of her vehicle.
The plaintiff, Alma LeBlanc, a sixty-one year old widow, was returning from a fishing trip in Cameron Parish with her pet Chihuahua at the time of the accident. As a result of her injuries, she is paralyzed from the waist down, suffers constant pain, and must be cared for continually by her daughter. The trial court awarded her $638,000 for her medical expenses, care and therapy, pain and suffering.
The uncontroverted facts as recited by the trial judge are as follows:
"The accident occurred on La. Highway 27 during daylight hours between mile post markers 18 and 19. Alma LeBlanc, plaintiff, was traveling northward on La. Highway 26 and reached a point in the road where a curve began in which the road changed from a northeasterly direction to a northerly direction. This resulted in a left turning curve to a north traveling driver. The curve was rounded and the angle was not remarkably acute.
"La. Highway 27 in this stretch was a two-lane highway with asphalt surface and narrow shoulders covered with loose clam shell. On the outside of the curve (east shoulder) the roadway was some four to six inches higher than the shoulder.
"On entering the curve, plaintiff accidentally drove her automobile off the roadway onto the shoulder. She experienced the sensation of the dropoff. She testified that she pulled back onto the highway and lost control. The physical evidence of tire marks suggest(s) that she may have lost control while still on the shoulder. Nevertheless, upon regaining the surface of the highway, plaintiff could no longer control her automobile and turned sideways in the road where she was struck broadside by an automobile in the south-bound lane. Plaintiff's vehicle then entered a canal on the west side of the road."
*855 Regarding the crucial moment before the accident the plaintiff testified: "* * * I seen cars coming approaching me, so I stayed to my side; made sure I was over to my side, and then the next thing I knew there was a drop-off. I had stepped off of the ... dropped off of the highway, and I pulled ... quickpulled back up onto the highway, and I lost control, and that's all I ever remembered." The other evidence of record corroborates and does not conflict with this testimony.
On defendant's appeal, the appeals court affirmed the finding of the trial court that the Department had been negligent in allowing the dangerous shoulder condition to exist but reversed its decision as to the plaintiff's claim against the Department. See 405 So.2d 635. The court of appeal held that the plaintiff had been contributorily negligent and was barred from recovery because of her attempt to remount the roadway, instead of gradually slowing her vehicle, and then maneuvering it safely back onto the paved surface. The appellate opinion indicates that the court thought this result was somehow required by our decisions in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) and Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
The court of appeal, seeking to extract rules of precedent from our previous opinions instead of evaluating the relationship between the department's duty and the particular risk involved here, fell into error because of a faulty approach. In Rue v. State Department of Highways, this court held that the Department's duty to maintain safe highway shoulders imposed an obligation to protect a motorist who inadvertently drove onto the shoulder from the risk of striking an unexpected deep rut caused by negligent maintenance. Id 1198 n. 2, 1199. But all rules of conduct are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it shows that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972) (quoting Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956). Accordingly, in a later case presenting the question of whether a different type of risk was protected against by the same legal duty, this court reexamined the Department's obligation to maintain highway shoulders and held that the duty is not imposed to protect a motorist against a shoulder defect of which he has full knowledge and a reasonable opportunity to avoid.[*]Sinitiere v. Lavergne, supra.
In the present case the particular risk which gave rise to plaintiff's injuries was unlike those from which harm resulted in the previous cases. As opposed to the motorist in Rue, Mrs. LeBlanc's accident resulted not only from her inadvertence in straying from the road and encountering an unexpected shoulder defect. These factors in combination with her instinctive overreaction when her wheels dropped onto the low shoulder caused her injuries. Unlike the motorist in Sinitiere, Mrs. LeBlanc had no knowledge or notice of the shoulder defect before encountering it and no reasonable opportunity to avoid it. Although the dropoff in the present case was substantial, it was not immediately apparent to a motorist approaching the curve at a normal speed. Mrs. LeBlanc had never driven on the road before, and there were no signs to alert her to the drop-off. Discovering the dropoff only as her wheels slipped over the edge, Mrs. LeBlanc's immediate instinctive reaction led directly to her loss of control and the accident. Consequently, it is necessary that we carefully examine the facts of *856 the present case to determine whether there is a legal duty imposed upon the Department which protects against the particular risk involved.
The accident in this case occurred because of the four to six inch dropoff of the shoulder at the site of the mishap. If the Department had maintained the shoulder at the same or approximate elevation of the roadway the plaintiff probably would not have lost control of her car. The evidence is undisputed that the four to six inch dropoff of the shoulder created a dangerous hazard to motorists and was a cause in fact of Mrs. LeBlanc's accident.
If the defendant's conduct of which the plaintiff complains is a cause in fact of the harm, we are then required in a determination of negligence to ascertain whether the defendant breached a legal duty imposed to protect against the particular risk involved. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Jones v. Robbins, 289 So.2d 104 (La.1974); Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogue on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973). The basic question, therefore, is whether the risk of injury from a motorist's instinctive reaction to an unexpected four to six inch dropoff from a paved highway to its shoulder, produced by a combination of the Department's failure to provide a continuous even surface and the plaintiff's inadvertent straying onto the shoulder, is within the scope of protection of the rule of law which requires the Department to maintain safe highway shoulders.
We are of the opinion that the Department was under a duty to protect this plaintiff from the risk which gave rise to her injuries. One purpose of a highway shoulder is to provide a margin of error for the safety of motorists. A highway without a shoulder or one which never permits safe deviation from the main traffic lanes would be intolerably unsafe. Of course, the duty imposed on the Department is tempered by common sense. As this court held in Sinitiere, it does not protect a motorist against a shoulder defect or obstruction of which he has knowledge and a reasonable opportunity to avoid. But in the absence of such knowledge and opportunity, the motorist is entitled to assume that a highway shoulder is maintained in a reasonably safe condition and that his inadvertent deviation onto it will not lead to disastrous consequences. One witness qualified as an expert in driving techniques by the Department, when asked if it is an accepted fact that people do get off of the traveled portion of the roadway, replied that "we all do." Moreover, a motorist's instinctive overreaction to an abrupt dropoff between roadway and shoulder is part of the risk against which the legal duty is designed to protect. It may be true, as the Department's experimental evidence demonstrated, that an expert driver with advance knowledge of a six inch dropoff can deviate on to the shoulder at high speed and return safely to the highway by holding the steering wheel steady and making a gradual reentry. Nevertheless, as the Department's driving technique expert testified, the natural instinct of an ordinary driver, without prior warning or specific training, is to attempt to regain immediate entry onto the highway, thereby creating a risk of loss of control. Because a substantial percentage, if not a majority, of ordinary drivers encountering an unexpected four to six inch descent upon inadvertently deviating slightly from the roadway would react instinctively as Mrs. LeBlanc did, the legal duty of the Department to maintain safe highway shoulders is imposed to protect against this risk.
The Department has not complained of error in the trial court's assessment of Mrs. LeBlanc's damages in either this court or the court of appeal Accordingly, the court of appeal judgment is reversed, and the trial court judgment is reinstated at defendant's cost.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
MARCUS, J., dissents and assigns reasons.
*857 BLANCHE, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
BLANCHE, Justice (dissenting).
For the reasons we stated in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), the court of appeal reversed the finding of the trial court that the four to six inch dropoff was the principal cause of the accident. Also for the reasons assigned in Sinitiere, I must dissent from the majority opinion, believing that the opinion of the court of appeal was correct.
The majority opinion seeks to distinguish the facts of this case from those of Sinitiere, but in doing so fails to recognize that a crucial portion of the inquiry must be whether Mrs. LeBlanc was negligent in immediately attempting to swerve back onto the roadway without slowing down to be certain she had control of her car. I agree with the finding of the trial court that the Department was negligent in allowing a dangerous shoulder condition to exist; however, I cannot subscribe to the opinion of the majority that a person who "instinctively" swerves back onto the roadway somehow owes less of a duty of reasonable care than a motorist who drives along the shoulder before attempting to re-enter the roadway. Indeed, just the opposite would seem true and this writer seriously doubts whether this court would relieve the "instinctive swerver" from liability if some 3rd person was killed or injured when the instinctive swerver reentered the highway.
In Sinitiere v. Lavergne, supra, a motorist inadvertently allowed his two right wheels to ease onto the shoulder of the road. Aware that he was on the shoulder, the motorist slowed to approximately 40 miles per hour, but sought to re-enter where there was a three to four inch dropoff. When his right wheels struck the paved surface, the motorist lost control of his vehicle and careened across the center line where he was struck by an oncoming car. 391 So.2d at 823, 824. We held that the motorist breached the duty of reasonable care owed to himself and other motorists in the vicinity by attempting to swerve back onto the road at the point of the dropoff while still travelling at 40 miles per hour. Id. at 826. As we noted in Sinitiere, a motorist's duty of reasonable care includes the duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir. 1975), writ denied 325 So.2d 608 (La.1976). Mrs. LeBlanc testified that she was travelling "around 45" and "dropped off the highway," then "quick-pulled back up onto the highway" where she lost control of her car. If anything, Mrs. LeBlanc was less careful in re-entering the roadway than the motorist we deemed to be negligent in Sinitiere. As opposed to that motorist, Mrs. LeBlanc, knowing that she had driven off onto the shoulder of the road, swerved into the dropoff without slowing down.
In Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979) we held that mere inadvertence in allowing one's wheels to stray onto the shoulder of a highway was not necessarily such substandard conduct so as to bar recovery from the highway department where the department had allowed a dangerous shoulder condition to exist. However, in Sinitiere, where the shoulder defect was a dropoff, we imposed a duty upon the motorist who negligently allows his vehicle to stray off of the roadway to exercise reasonable care in re-entering. Mrs. LeBlanc made no attempt to slow down before re-entering, but instead "quick-pulled back up onto the highway" where she lost control of her car. For these reasons assigned, I would find that Mrs. LeBlanc's negligence in re-entering the roadway is a bar to her recovery.
Accordingly, I respectfully dissent.
MARCUS, Justice (dissenting).
I agree that, generally, when a person inadvertently drives onto the shoulder of the road, there is an instinctive reaction to reenter the road. However, not so, where, as here, plaintiff experienced the "sensation of the dropoff" (from four to six inches) as she inadvertently traveled onto the shoulder *858 of the road. I consider her attempt to pull back onto the highway under these circumstances to have been unreasonable. Rather, she should have slowed down until she gained control of her vehicle before attempting to re-mount the highway. In my view, her negligent conduct was a contributing cause of the accident which would bar her recovery. Accordingly, I respectfully dissent.
NOTES
[*] In that case the defendant motorist inadvertently allowed his right two wheels to stray from the roadway onto the shoulder, where he was alerted to the existence of the sharp offset between the pavement and the shoulder. After travelling about one hundred feet on the shoulder in complete control, the motorist consciously attempted to climb this offset back onto the roadway at a speed of 35 to 40 miles per hour in the face of oncoming traffic. He lost control on attempted reentry and collided with an oncoming car.