506 So.2d 719 (1987)
John E. KYLE
v.
The CITY OF BOGALUSA, Louisiana, Insurance Company of North America, State of Louisiana, Department of Transportation and Development, Elmo H. Flot, Jr. and the Travelers Indemnity Company of America.
No. CA 86 0095.
Court of Appeal of Louisiana, First Circuit.
April 14, 1987.
Rehearing Denied May 11, 1987.
*721 Charles M. Hughes, Bogalusa, for plaintiff-appellant John Kyle.
Patrick Berrigan and James Wyly, III, Slidell, Donald M. Fendalson, Bogalusa, for defendant-appellee City of Bogalusa Ins. Co. of North America.
Grayson H. Brown, Baton Rouge, for defendant-appellee Travelers Indem. Co.
William J. Doran, Jr., Baton Rouge, for appellant State of La., Dept. of Transp. & Development.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is a tort suit wherein plaintiff seeks to recover damages allegedly sustained as a result of a collision between his motorcycle and a vehicle parked in front of a church on a state highway. Made defendants were the City of Bogalusa (City) and their insurer, Insurance Company of North America (INA), the State of Louisiana, through the Department of Transportation and Development (DOTD), Elmo H. Flot, Jr. (owner of the parked car) and Travelers Indemnity Company of America (Travelers), the uninsured motorist carrier of the plaintiff's father.
The City and INA answered and denied liability and pled the affirmative defense of comparative negligence. The City also filed third party demands against the DOTD, the New Triumph Baptist Church (Church) and the church's pastor, Reverend Jacob Sartain. The DOTD answered denying liability, pled the affirmative defenses of comparative negligence and assumption of risk and filed third party demands against the City, the Church and the plaintiff. Travelers answered, denied liability and third partied the City, INA, DOTD, Flot, the Church and the pastor. The pastor and the Church third partied the DOTD and reconvened against the City and INA. Flot also answered denying liability. The pastor was dismissed as a defendant by stipulation of all parties at the trial.
After a trial on the merits, the trial court found the following: 25% negligence on behalf of the City, 25% negligence on behalf of the DOTD, 25% negligence on behalf of Flot and 25% negligence on behalf of the plaintiff. The court found no negligence on behalf of the Church and dismissed the third party demand against the Church. The court awarded the plaintiff $118,130.72 and reduced this amount by 25%, leaving a net recovery of $88,598.04. The court granted the City and INA's third party demand against DOTD for one-half of whatever the City or INA may be obligated to pay in excess of their one-third pro rata share. The trial court dismissed with prejudice the third party demand of the DOTD against the plaintiff. The court *722 granted the DOTD's third party demand against the City for one-half of whatever the DOTD may be obligated to pay in excess of its one-third pro rata share. The court rendered a judgment in favor of Travelers on its third party demand for full indemnification against Flot. The court also granted Travelers' third party demands against the City and INA for one-half and DOTD for one-half of whatever Travelers may be required to pay in excess of its one-third pro rata share.
Timely suspensive appeals were filed by the DOTD and Travelers. A devolutive appeal was taken by the plaintiff. Flot, the City and INA did not appeal or answer the appeal.

FACTS
The accident occurred on the night of October 6, 1981, at approximately 8:20 p.m. within the city limits of Bogalusa, Washington Parish, Louisiana, on Louisiana Highway 21 (Sullivan Drive). Sullivan Drive is a four-lane highway. The north and southbound lanes are separated by two continuous yellow lines. Just prior to the accident, the plaintiff, John Kyle, was riding his motorcycle in a southerly direction in the inner traffic lane behind a large tractor-trailer. Kyle testified that he was traveling from ten to fourteen feet behind the truck at a rate of speed of twenty to twenty-five miles per hour. The truck ahead of Kyle slowed down. Kyle believed the truck slowed in anticipation of making a left turn onto Seventh Street. At that point, Kyle decided to switch lanes and accelerated in an effort to pass the truck. When he entered the right-hand lane, he immediately struck a barricade and Flot's vehicle parked directly behind the barricade, both of which were located in the right-hand travel lane of the highway in front of the Church.
The right-hand lane of Sullivan Drive immediately in front of the Church was used for parking for church services. A sawhorse type barricade and two smudge pots were placed behind the last vehicle parked for church services. On the night of this accident, the barricade and smudge pots were placed by the janitor of the Church behind the vehicle owned by Flot. It is disputed whether or not the pots were lighted at the time of the accident. As a result of the accident, Kyle suffered multiple lacerations, contusions and two broken legs.

LIABILITY OF DOTD
The trial court attributed 25% fault to the DOTD after finding that it was both strictly liable under La.C.C. art. 2317 and negligently liable under La.C.C. art. 2315. Specifically, the trial court found liability because (1) the highway did not have a shoulder, (2) the DOTD failed to correct the dangerous condition and (3) the DOTD failed to warn of the dangerous condition.

Duty to have a Shoulder on a Highway
In La.R.S. 48:1(11), (20), (21) and (22), the legislature has defined the following terms which are applicable in the instant case:
(11) `Highway' means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes.
....
(20) `Roadway' means that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder.
(21) `Shoulder' means the portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface.
(22) `Roadside ditch' means any ditch constructed or maintained by the highway agency having jurisdiction over the highway, contiguous to the shoulder thereof, for the purpose of draining the highway.
It is well settled that the State owes a duty to the traveling public to maintain the roadway and the shoulder of a highway in a reasonably safe condition for vehicular use. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Department of *723 Highways, 372 So.2d 1197 (La.1979). The roadway and shoulder of a highway are intended for vehicular use by statutory definition and, therefore, must be properly maintained for such use. At issue here is whether the highway must have a shoulder, that is, when the State (through the DOTD or any other public entity, such as a parish or city) builds a highway, does it have a duty to provide a shoulder thereon?
The trial court, in its reasons for judgment, cited LeBlanc v. State, 419 So.2d 853, 856 (La.1982) for the proposition that "[a] highway without a shoulder or one which never permits safe deviation from the main traffic lanes would be intolerably unsafe."
Initially, we note that the above-quoted language is dictum. In LeBlanc, the issue to be decided was framed as "whether the plaintiff motorist's inattention in allowing her vehicle to stray from the roadway onto a dangerously low shoulder followed instinctively by her immediate swerve back onto the elevated road surface precludes her recovery ..." LeBlanc, 419 So.2d at 854. The facts in LeBlanc show that the highway in question had narrow shoulders covered with loose clam shells and that there was a drop of four to six inches from the roadway to the shoulder. The court of appeal held the plaintiff's conduct constituted contributory negligence that barred her recovery. The Louisiana Supreme Court ruled that DOTD's "duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp dropoff from the roadway and her consequent instinctive oversteering of her vehicle." (Emphasis added.) Le-Blanc, 419 So.2d at 854. Since the highway in LeBlanc had a shoulder, the issue of whether or not a highway must have a shoulder was not presented for a decision. A further distinction between LeBlanc and the instant case is that the accident in LeBlanc appears to have happened on a highway in a rural area, whereas, in the instant case, the accident occurred within the corporate limits of a municipality.
In Myers v. State Farm Mutual Automobile Insurance Company, 483 So.2d 1063 (La.App. 1st Cir.1985), the plaintiff was a guest passenger in an automobile which was forced off of the roadway by an oncoming, passing vehicle and struck a tree in the roadside ditch. The shoulder between the roadway and the roadside ditch was one to two feet wide in Myers. On original hearing, a majority of this court held, in part, that "the DOTD breached its duty to maintain its roadways in a reasonably safe condition, and that breach was partially responsible for this accident because Brister [the driver of the host vehicle] did not have a safe zone in which to maneuver his car under emergency conditions." Myers, 483 So.2d at 1066. However, this court granted a rehearing and stated "[w]e never intended to hold, ... that the State is required to provide shoulders for all highways." A majority of this court then held that the widening of the roadway which reduced the shoulder size from four feet to one or two feet, the sharply sloped roadside ditch with the tree in it and the "peculiar circumstances of this case" constituted negligence, that is, a breach of the duty to maintain roadways in a reasonably safe condition. Myers, 483 So.2d at 1073.
The Louisiana Supreme Court granted a writ in Myers and reversed. Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La.1986). The Court set forth the applicable law as follows:
While the basis for determining the existence of the duty is different in art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).6 DOTD's duty to travelers is to keep the highways and their shoulders in a reasonably safe condition. LeBlanc v. State, 419 So.2d 853 (La.1982); ... Whether DOTD had breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition will depend upon the particular facts and circumstances of each case. *724 6. As we explained in Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982), in a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk. In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage. Thus, in both instances, the claimant must prove that the owner breached his duty to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm. [Bolding added and footnote 7 omitted.]
Myers, 493 So.2d at 1171-1172.
The Court then reviewed the facts of the case and found no liability by the DOTD with the following rationale:
The physical characteristics of Greenwell Springs Road are not unique; many Louisiana roads have narrow shoulders and steep roadside ditches and are lined with trees, culverts, fences and other objects. Dr. Olin K. Dart, an expert in civil and traffic engineering and in accident reconstruction, testified that it would be physically and financially impossible to bring all of the state's roads up to modern standards. Mr. Hickey also believed that the state could not possibly meet such a burden. We agree. For this reason, the failure of DOTD to reconstruct the state's highways to meet modern standards does not establish the existence of a hazardous defect....
Thus, the evidence adduced at trial established that all work done on Greenwell Springs Road prior to 1977 complied with applicable standards then in effect. In 1977, the lanes were widened, and the roadway and shoulders were resurfaced. Although technically the horizontal clearance was decreased, overall the highway was improved and made more safe for persons traveling on it because the lanes of travel were widened and the surface of the road was improved, but the crown of the highway was not brought any closer to roadside objects. At the time of the accident, the surface of the highway and the markings on it were in good condition. Under these circumstances, we find that the stretch of road in question did not present an unreasonable risk of harm, that is, DOTD did not breach its duty to keep Greenwell Springs Road in a reasonably safe condition.
[Bolding added.]
Myers, 493 So.2d at 1173.
In Pleune v. State, Department of Transportation & Development, 481 So.2d 1365 (La.App. 1st Cir.1985), a host driver and guest passenger (who had been drinking together) were proceeding on a State highway when the driver lost control in a curve and struck a tree in the roadside ditch. In Pleune, the shoulder was one and one-half to three feet wide, and the other facts were remarkably similar to Myers. This court held the width of the shoulders and other factors did not constitute an unreasonable risk of injury.
As previously indicated, La.R.S. 48:1(21) lists the purposes of the shoulder of a highway as (1) accommodation of stopped vehicles (parking), (2) emergency use and (3) lateral support of base and surface. In Myers and Pleune, one of the questions was whether a small shoulder (one to three feet), which is obviously inadequate to accommodate the width of an automobile in an emergency situation, constitutes a defect (unreasonable risk of harm) in the highway. In both cases, the courts answered "no." We see no meaningful distinction between an inadequate shoulder *725 and no shoulder; in either instance, there is insufficient space for an intended use. Further, we see no meaningful distinction between inadequate or no space for emergency use and inadequate or no space for parking; emergency use and parking are both intended purposes of the shoulder. For these reasons, we believe the rationales of the Myers and Pleune cases may be applied by analogy in the instant case.
The facts of record do not show that the lack of a shoulder for parking created an unreasonable risk of harm. There was parking available for churchgoers on Sixth and Seventh Streets, each a block away; parking in front of the Church was a convenience. There is no evidence of record to show when Sullivan Drive was four-laned in the mid-60's that it was not built in accordance with prevailing standards. Leey Mapes, the district construction engineer for DOTD, testified that Sullivan Drive has no shoulders as it passes through the residential and business areas of Bogalusa and that most similar type highways inside cities do not have shoulders, although some do have one shoulder and some have two shoulders. As hereinafter discussed in greater detail, DOTD proscribed parking on the roadway in front of the Church, as it was authorized by law to do, on public safety grounds.
Further, as indicated in Myers, the plaintiff bears the burden of establishing the facts that show a duty flows from the defendant (DOTD) in his favor. See also Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La.1985); Prosser and Keeton, The Law of Torts, § 37 pp. 235-238 (5th ed. 1984). To determine the existence and/or the scope of a duty a "judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community." Entrevia v. Hood, 427 So.2d 1146, 1149-1150 (La.1983). All rules of conduct (duties), whether legislative or jurisprudential, are designed to protect some persons under some circumstances against some risks. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
The basic purpose of a roadway is to provide transportation of persons, goods and/or services from one place to another. Roadway access to a geographical area results in business, residential and/or recreational development. Obviously, it is morally and socially desirable for all Louisiana roadways to have shoulders which can be used for emergencies and/or parking. If such were provided, accidents, injuries and even deaths will be avoided. However, apparently in the past the legislative and executive branches of Louisiana's State government (and cities and parishes) have designed, funded and built roadways which do not have shoulders. This indicates legislative and executive determinations that, in some instances, the social utility of having roadway access to an area outweighs the risks involved in not having such shoulders.
In defining and/or establishing a duty, a court should consider economic factors as well as social and moral factors. Entrevia, 427 So.2d at 1149-1150. The record presently before us does not reflect [if there is a duty that a highway must have a shoulder] (1) how many miles of State (or parish and municipal) roadway will be affected, (2) the cost of obtaining servitudes or title to comply with the duty, (3) the cost of reconstruction of the roadways to comply with the duty, (4) the approximate number of accidents that would be avoided by compliance, or (5) the effect of allocating compliance costs on the ability of the State to provide other essential services, such as education, police protection or health care. If the State (parish or municipality) does not have the economic resources to comply with such a duty, what alternatives are available to it? It can either close the roadway or continue to operate it. If the first alternative is selected, the results could be catastrophic for the owners of residences and businesses. If the second alternative is selected, what is the exposure to liability and how will this exposure affect the ability of the State to *726 provide other essential services. If the State does have the economic resources to comply with the duty, (1) how long will compliance take, (2) what will be the exposure to liability in the interim and (3) what effect will the interim exposure and cost of compliance have on the ability of the State to provide other essential services? The duty asserted herein should be imposed only "after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of the harm, and a consideration of individual and societal rights and obligations." Entrevia, 427 So.2d at 1149. Cf. Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1st Cir.1985), writ denied, 476 So.2d 356 (La.1985). There are insufficient facts of record to properly determine if the duty should be imposed.
Parked vehicles on the roadway do not constitute a defect in the roadway. In Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127, 134 (La.1983), the court found that a temporary situation existing in the travel portion of a highway does not constitute a defect as contemplated by La.C.C. art. 2317. A "defect" is some flaw or fault existing or inherent in the thing itself. The temporary existence of other objects which may constitute a hazard does not constitute a defect in the premises. Cf. Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). Thus, the temporary parking of vehicles on the roadway is not a defect in the roadway for which the DOTD would be strictly liable under La.C.C. art. 2317.

Failure to Correct Dangerous Condition
DOTD was not negligent in failing to correct a dangerous condition on the roadway. The law of Louisiana places the responsibility for enforcement of traffic laws on the municipality involved and on the Louisiana Department of Public Safety [now the Department of Public Safety and Corrections, La.R.S. 36:409(B)]. La.R.S. 32:3 and 41. The DOTD is prohibited by statute from enforcing any of the highway regulatory laws except those pertaining to oversized and overweight vehicles. La.R.S. 32:2(B). Under this same statute, the DOTD has authority to promulgate regulations (Director's Orders) that become effective when filed with the clerks of court in the parishes in which such regulations are to have effect. In the instant case, the evidence shows that, pursuant to the above authority, the DOTD, by Director's Order No. 23 of 1967, established "No Parking" zones along the area of Sullivan Drive where the accident occurred. Specifically, the order provided that "[n]o person shall stop, stand or park any vehicle, except during emergency conditions, on the paved portion of State Route La. 21 Bypass ..." The Director's Order was properly filed in the clerk's office in Washington Parish as required by La.R.S. 32:2. One of the photographs in evidence shows a "NO PARKING" sign about a block and a half from the Church.
The DOTD was not the proper enforcement body in the instant case. La.R.S. 32:3 provides that the Department of Public Safety and Corrections is charged with the enforcement of the provisions of the Chapter and the department's regulations adopted pursuant thereto. The Department of Public Safety and Corrections was not made a party defendant.[1]

Failure to Warn of Dangerous Condition
The trial court held the DOTD was negligent for failure "to post warning signs along Highway 21 to notify approaching motorists of this potentially dangerous situation", citing Garrick v. Washington Parish, 440 So.2d 787 (La.App. 1st Cir. 1983), writ denied, 444 So.2d 1222 (La. 1984).
Garrick is clearly not applicable. In that case, the plaintiff was traveling on a rural highway on a dark, foggy night when she was suddenly confronted by a sheriff's *727 patrol car stopped with its lights on in her lane of travel. Garrick pulled her vehicle onto the right shoulder of the highway to avoid the patrol car and struck an unmarked, unilluminated concrete loading platform which projected from a roadside store onto the shoulder to within three feet of the roadway. This court observed that "[t]here were no warning signs, or any other warnings, signifying the dangerous proximity of the platform to the highway." Garrick, 440 So.2d at 789. This court set forth the trial court holding as follows:
The court found that in failing to post warning signs or otherwise give adequate warning of the hazardous condition (a concrete platform protruding across the shoulder to within about three feet of the roadway), the Department had further breached its duty to properly warn motorists of a condition which posed a danger to the motoring public.
Garrick, 440 So.2d at 790.
Garrick involved a permanent obstruction in the shoulder of the highway which DOTD allowed to be present; it did not involve illegal parking in the roadway by highway users.
The essence of the trial court's holding on this issue is that DOTD had a duty to warn highway users that at various times other highway users parked on the roadway in front of the Church, in violation of DOTD's regulation and caused a dangerous obstruction. (Query: Must DOTD warn highway users that other users drive at an excessive rate of speed, in a drunken condition or in a reckless manner?) No authority for such a duty has been cited to us, and we have found none. Certainly, DOTD had a duty to post the area with "NO PARKING" signs. Director's Order No. 23 of 1967 reduced the speed limit on Sullivan Drive to thirty-five miles per hour. We do not believe that in this factual posture DOTD had a duty to put up signs warning that highway users were parking on the roadway in violation of the "NO PARKING" signs.
This assignment of error has merit.

LIABILITY OF KYLE
Kyle assigns as error any finding of fault against him.
La.R.S. 32:74 provides as follows:
A. The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:
(1) When the vehicle overtaken is making or about to make a left turn;
(2) Upon a one-way street, or upon a highway on which traffic is restricted to one direction of movement, where the highway is free from obstructions and of sufficient width for two or more lines of moving vehicles;
(3) Upon multiple-lane highways.
B. The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main traveled portion of the highway. [Emphasis added.]
The plaintiff's own testimony, viewed in light of La.R.S. 32:74, shows that this accident would not have taken place but for his negligent actions.
The facts show Kyle was following a large truck at a distance of only ten to fourteen feet while moving at a speed of at least twenty to twenty-five miles per hour. Kyle was driving at the extreme left of the truck, from which vantage point he could not see the right lane at all. Then, rather than slow down, drop back and ease over carefully to the right and look to see if the lane was clear, Kyle simply moved over into the right lane accelerating as he made his maneuver. Kyle did not pass to the right "only under conditions permitting such movement in safety." He was following too closely, failed to look before changing lanes and accelerated into the right lane of traffic.
Many of the duties imposed upon motor vehicle drivers are detailed in the Louisiana Highway Regulatory Act, La.R.S. 32:1, et seq. Section 74(B) permits passing on the right on multiple lane highways, only under conditions where the passing may be done in safety. Section 81(A) imposes a duty *728 not to follow a vehicle more closely than is reasonable and prudent under the existing traffic and highway conditions. The essence of these duties is reasonableness of conduct in the traditional negligence context. Commercial Union Insurance Company v. Stidom, 408 So.2d 285 (La. App. 2nd Cir.1981).
A driver is under an obligation not to move his vehicle from one traffic lane into another lane until he has first ascertained that such movement can be made with safety. Ellis v. Coleman, 309 So.2d 716 (La.App. 4th Cir.1975). When Kyle decided to go around the decelerating left turning vehicle, he came under a duty to ascertain that he could safely proceed in the right lane before entering it. Therefore, the plaintiff's conduct contributed to the accident; this finding of fact of the trial court is not clearly wrong.
This assignment of error by Kyle is without merit.

LIABILITY OF THE CHURCH
Only the DOTD assigned error for the finding of no liability by the Church in the trial court. DOTD third partied the Church alleging it, and others, were liable for contribution. Because we find DOTD was not primarily liable, its third party demand is no longer at issue. Since no other party contests the release of the Church, that issue is no longer before us.

LIABILITY OF FLOT AND TRAVELERS
Travelers assigns as error the findings of the trial court that Flot was at fault in parking in the roadway of Sullivan Drive adjacent to the Church.
Flot admitted he parked his vehicle in the middle of the outer, southbound lane of traffic on Sullivan Drive. Flot brought his stepmother to church, but did not attend the service himself. When Flot left his vehicle unattended in the highway, the "sawhorse" type barricade and smudge pots had not been placed in the roadway.
The actions of Flot were clearly in violation of Director's Order 23 of 1967. See also La.R.S. 14:97 and 48:342. A violation of a traffic regulation is actionable in tort when it is the legal cause of a collision. Such violation is also punishable under La. R.S. 32:57. Obviously, the risk of a motorist colliding with an automobile parked on the traveled portion of the highway is within the scope of protection of the duty imposed on Flot not to park there.
The fact that Bogalusa and state police did not enforce the statute prohibiting parking in the roadway might reduce the degree of negligence of a motorist disobeying the law, but it does not exculpate him entirely. Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968). Therefore, the finding that Flot was at fault is correct.
This assignment of error is without merit.

PERCENTAGE LIABILITY OF THE CITY, FLOT AND KYLE
Kyle asserts the trial court erred in assigning 25% fault to him. Travelers asserts the trial court erred in assigning 25% fault to Flot. As previously indicated, the City (and INA) did not appeal and, thus, assign no error.
Since we have reversed the portion of the trial court judgment decreeing DOTD to be guilty of 25% fault, it is necessary that there be a reapportionment of fault between the remaining tort-feasors. Since the complete record is before this court, we will, in the interest of judicial economy, make this determination, rather than remanding this case to the trial court. Efferson v. State, Through Department of Transportation & Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). The erroneous finding of liability for DOTD has interdicted the trial court factual findings on the percentage of fault for the other parties. Because of this, we must make an independent review of the evidence when we reapportion the fault between the remaining tort-feasors. Suhor v. Gusse, 388 So.2d 755 (La.1980); Ragas v. Argonaut Southwest Insurance Company, 388 So.2d 707 (La.1980); Gonzales v. Xerox Corporation, *729 320 So.2d 163 (La.1975). In assigning percentages of fault attributable to each tort-feasor, a court should consider both the nature of each party's conduct and the extent of the relation between that conduct and the damages suffered. In Watson v. State Farm Fire And Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the factors to consider in making this determination include:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The facts supporting the liability findings for Flot and Kyle have been previously set forth herein. The trial court made the following factual findings about the City's liability:
Although Louisiana Highway 21 is a state highway, the City is empowered to enforce state regulations upon state highways within its' [sic] corporate limits, as well as adopt its' [sic] own ordinances to regulate traffic on these highways. LSA-R.S. 32:41.
Accordingly, the Court finds that the City has a duty to enforce the law upon state highways which pass through its' [sic] corporate limits.
Testimony at trial revealed that the City was aware of the problem of parking in the outer lanes of Louisiana Highway 21 for at least ten years. Several complaints were voiced to the City, yet the City took no significant action to attempt to resolve the problem. Furthermore, the City was notified by the State through Directors Order 23 of 1967, that parking was prohibited upon the paved portion of Highway 21. The City's failure to take sufficient measures to resolve this problem was a breach of this duty by the City. The breach of this duty was a substantial factor in bringing about the accident herein, and is therefor [sic] found to be a cause in fact of the accident. Further, the risk of a motorists' [sic] colliding with an automobile parked within the travelled portion of the highway is within the scope of protection of the City's duty to enforce the law upon these highways.
Because the City (and INA) have not appealed, we need not determine whether or not the public duty doctrine is applicable to determine the City's liability. Cf. McNeal v. Division of State Police, Department of Public Safety, 412 So.2d 1123 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1252 (La. 1982). Compare Guillot v. State, Louisiana State Police, 364 So.2d 254 (La.App. 3rd Cir.1978), writ denied, 366 So.2d 576 (La.1979) and Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4th Cir.1977), writ denied, 343 So.2d 1069 (La.1977) with Stewart v. Schmieder, 386 So.2d 1351 (La.1980) and Lott v. Landor, 452 So.2d 1266 (La. App. 1st Cir.1984), writs denied, 458 So.2d 119, 125 (La.1984). In any event, the evidence further shows that the City assisted in the violation of Director's Order 23 by furnishing the Church with a barricade and smudge pots to put in the roadway with the illegally parked cars. La.C.C. art. 2324. The evidence also shows that the barricade furnished by the City was made of dark wood and did not meet the visibility requirements of the Manual on Uniform Traffic Control Devices. La.R.S. 32:235. Thus, although the City furnished a warning device, the device was negligently inadequate. La.C.C. art. 2315.
Accordingly, after carefully reviewing the record and applying the guidelines stated above, we assess 50% fault to the City, 25% fault to Flot and 25% fault to Kyle.

QUANTUM
Kyle contends the award of $95,000 for general damages was inadequate and should be increased to $200,000. A general damage award will be reviewed on appeal by the "much discretion" standard. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
*730 As a result of the accident, Kyle received multiple lacerations and contusions and two broken legs. He underwent surgery and, thereafter, both legs were placed in long leg casts. The postoperative course was uneventful, and he was released from the hospital twelve days later.
During the next six months, plaintiff visited Dr. Luis F. Matta ten times before being released from his care on April 1, 1982. During this time, plaintiff healed well and was rehabilitated with physical therapy. He did, however, experience considerable pain and irritation, largely due to a metal screw that had been placed in his left leg during the aforementioned surgery. The screw was later removed while plaintiff was under local anesthesia.
Since his discharge from Dr. Matta's care, plaintiff experiences occasional pain, especially when standing for extended periods of time or squatting, which plaintiff's occupation as a mechanic/welder requires. Dr. Matta testified, through deposition, that this pain will probably be permanent. Dr. Matta testified that plaintiff has 10% partial permanent disability in his right leg, due to the October 6, 1981 accident and will probably experience arthritic problems in his left knee at an increased rate due to the injury.
After reviewing all of the facts and circumstances, we find there is no abuse of discretion in the award of general damages in this case. When we test the record before us as against the admonition that an abuse of trial court discretion must be clearly demonstrated before we can tamper with the award, we are left with the conclusion that the award of $95,000 to plaintiff in this case is supported by the record and not violative of the trial court's much discretion. Because we find that there has been no abuse of discretion by the trial court, a review of prior awards is not necessitated. Engolia v. Cumis Insurance Society, Inc., 383 So.2d 1055 (La.App. 1st Cir.1980).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgments against DOTD are reversed and all claims against it are dismissed with prejudice. The judgments of the trial court which (1) found Flot and Travelers liable, (2) found Kyle negligent, (3) fixed Flot's degree of fault at 25%, and (4) fixed Kyle's degree of fault at 25%, are affirmed. The judgment of the trial court fixing the City's degree of fault at 25% is amended to increase the degree of fault to 50%. The judgment granting Travelers' third party demand against the City and INA is amended to give Travelers full recovery for all sums it is required to pay in excess of its one-third pro rata share. The cost of this appeal of $60 is assessed to Travelers.
REVERSED AND RENDERED IN PART; AMENDED AND AFFIRMED IN PART; AFFIRMED IN PART.
NOTES
[1] The evidence indicates the state police have a policy that they do not enforce state laws inside the corporate limits of municipalities unless requested to do so.