# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1181


**BRANDY ADAY**

**VERSUS**

**STATE OF LOUISIANA,
THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT**


************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT,
PARISH OF VERNON, NO. 71,576,
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.


**AFFIRMED.**

**L. Paul Foreman**
**Raggio, Cappel, Chozen & Berniard**
**Post Office Box 820**
**Lake Charles, Louisiana 70602**
**(337) 436-9481**
**Counsel for Defendant/Appellant:**
    **State of Louisiana, through the Department of Transportation and**
    **Development**

**W. Jay Luneau**
**Luneau Law Office**
**1239 Jackson Street**
**Alexandria, Louisiana 71301**
**(318) 767-1161**
**Counsel for Plaintiff/Appellee:**
    **Brandy Aday**

SULLIVAN, Judge.

The Department of Transportation and Development appeals the grant of summary judgment on the issue of liability in favor of Brandy Aday. For the following reasons, we affirm.

*Facts*

On October 20, 2002, Brandy Aday was driving in a westerly direction on Highway 8 in Vernon Parish when the passenger-side tires of her vehicle crossed over the fog line onto the shoulder of the highway. She testified that she slowed her speed and attempted to reenter the highway travel lane, but her right tires struck a four and one-half inch drop-off which caused her vehicle to jerk to the left side of the highway; she attempted to correct the direction of her vehicle, but her vehicle crossed back to the right side of the highway, then left the highway completely, and finally came to rest among some trees. She was seriously injured as a result of the accident.

Ms. Aday sued the State, through the Department of Transportation and Development (DOTD), alleging that the shoulder of Highway 8 was defective and that the defect was the cause of her accident and her injuries. DOTD answered the suit and denied liability. After discovery was conducted, Ms. Aday filed a motion for summary judgment on the following issues:

1.  Custody of the highway/shoulder;

2.  Whether the highway/shoulder was defective;

3.  Whether DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time;

4.  Whether the defect was a cause-in-fact of her injuries; and

5.  Whether the State is liable for her injuries.

The motion for summary judgment was supported with DOTD's answers to interrogatories in which it acknowledged that it had custody of Highway 8, and the

depositions of Ms. Aday, her expert witness, Duaine Evans, and DOTD's former maintenance superintendent for Vernon Parish, G.W. Sumney. DOTD filed a brief opposing Ms. Aday's motion but did not produce any evidence in opposition to the motion.

Mr. Evans testified in his deposition that there was a drop-off of four and one-eighth inches to four and one-half inches for approximately 440 feet in the area where Ms. Aday's accident occurred. He also testified that the shoulder was not level with the roadway and that the shoulder was made of recycled aggregate. He explained that recycled aggregate erodes easily because it will not compact. He characterized any drop-off greater than two inches in depth as a hazard, a four-inch drop-off as a significant hazard, and any drop-off greater than four and one-half inches as an extreme hazard. In Mr. Evans' opinion, Ms. Aday's accident would not have happened if not for the drop-off.

Mr. Sumney agreed with Mr. Evans' testimony that recycled aggregate erodes quickly and that a four-inch drop-off is dangerous and should be repaired immediately. Mr. Sumney acknowledged the existence of the eroded shoulder but testified that it had not been properly repaired due to lack of materials and/or equipment necessary for the repair.

DOTD contends that the trial court erred in concluding that there was no material issue of fact concerning: 1) the reasonableness of DOTD's response to the knowledge it held; 2) whether the defect in the highway shoulder was a cause in fact of Ms. Aday's accident; and 3) the comparative negligence of Ms. Aday.

### Summary Judgment

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The mover bears the initial burden of proof to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the nonmoving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id.*

Appellate courts review motions for summary judgments *de novo*, asking the same questions the trial court asks to determine whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765.

### Discussion

To prevail on her claim, Ms. Aday must prove that:

3

(1) the DOTD had custody of the thing which caused her damages;

(2) the thing was defective because it had a condition which created an unreasonable risk of harm;

(3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and

(4) the defect was a cause-in-fact of her injuries.

*Netecke v. State ex rel. DOTD*, 98-1182, 98-1197 (La. 10/19/99), 747 So.2d 489. As noted above, DOTD admitted in answers to interrogatories that it had custody of the highway, and it does not contest the trial court's grant of summary judgment that the four and one-half inch drop-off where Ms. Aday's accident occurred was a defect. Therefore, we need not address these issues.

In *Netecke*, 747 So.2d at 494-495 (citations omitted), the supreme court explained DOTD's duty with respect to public roadways:

> DOTD's duty is to maintain the public roadways in a condition that is reasonably safe and does not present an *unreasonable* risk of harm to the motoring public exercising *ordinary care and reasonable prudence*. DOTD must maintain the shoulders and the area off the shoulders, within its right-of-way, in such a condition that they do not present an *unreasonable* risk of harm to motorists using the adjacent roadway and to others, such as pedestrians, who are using the area in a reasonably prudent manner. DOTD's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find himself on, or partially on, the shoulder. This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive.
>
> This duty, however, does not render DOTD the guarantor for the safety of all the motoring public. Further, DOTD is not the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. Moreover, not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred. Whether DOTD breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous

4

roadway, depends on all the facts and circumstances determined on a case by case basis.

With these principles in mind, we address DOTD's assignments of error.

***DOTD's Response to Knowledge It Held***

DOTD first argues that the trial court did not address whether its actions were negligent based on information known and/or available to it. The trial court determined that "the State did have notice of the existence of the defective condition and failed to take appropriate corrective measures within a reasonable time." The trial court also enumerated the facts which led it to this conclusion:

> 1) Mr. Evans and Mr. Sumney's testimony established that "the State's usual method of using [recycled] aggregate to fill the drop-off area was of a very temporary nature."
>
> 2) Mr. Sumney conducted inspections approximately every two weeks.
>
> 3) Mr. Sumney further testified that "he was fully aware of the area of the highway in question and that the development of the drop-off [where this accident occurred] was a recurring problem."

Mr. Sumney also testified that he did not have ready access to the necessary materials and equipment to adequately repair defects in the state roads in Vernon Parish. In fact, he stated that Vernon Parish was treated as though it were part of Texas and called it "the stepchild of District 08."

DOTD argues that Mr. Sumney's testimony created a material issue of fact that a jury should address. It urges that a jury should determine whether its prioritization of repairs based on fiscal and physical limitations is appropriate in light of its statutory responsibility to maintain state highways. We do not agree. There is no jurisprudential or statutory support for DOTD's argument. DOTD's liability is premised on knowledge and timeliness of repairs. Accepting DOTD's argument

5

would allow it to ignore defects and escape liability although it had knowledge and sufficient time to repair them. This assignment is without merit.

*Cause-in-Fact*

The trial court determined that the four and one-half inch drop-off along Highway 8 was a cause-in-fact of Ms. Aday's accident. It explained that Ms. Aday did exactly what a motorist should do in that situation—she reduced her speed and attempted to gradually regain entry onto the roadway, but the drop-off prevented her from reentering the roadway. The trial court observed that Ms. Aday's accident "occurred just as Mr. Evans described it would happen under these circumstances" and concluded that she "took the appropriate and proper action, however, because of the defect it was impossible to prevent the accident."

DOTD urges this conclusion was error, arguing that there would not have been an accident if Ms. Aday had not veered from the travel lane onto the shoulder of the highway. In *Lasyone v. Kansas City Southern Railroad*, 00-2628, p. 9 (La. 4/3/01), 786 So.2d 682, 691 (citations omitted), the supreme court explained the concept of cause-in-fact, stating:

> A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder.

As the supreme court explained, an act need not be the only cause of harm to be a cause-in-fact of the harm. If not for the drop-off, Ms. Aday would have been able to steer her car from the shoulder back onto the highway without incident. The

6

trial court did not err in concluding that the drop-off was a cause-in-fact of Ms. Aday's accident and injuries.

***Comparative Negligence***

The trial court next found that there was no issue of material fact regarding comparative fault. DOTD contends this finding was error, arguing in part: "Inadvertence by a driver, which results in her vehicle leaving the travel portion of the roadway is, in every other instance, the very definition of negligence. The percentage of negligence attributable to Ms. Aday should be determined by a jury."

Counsel for DOTD asked Ms. Aday what caused her to lose control of her vehicle; she responded:

> [M]y passenger-side tires went off the road. And when I went to -- and when I let off the gas and went to come back onto the road, it threw me across the road.
>
> . . . .
>
> I let off the gas and tried to let it slow down, and then I eased it back on. And when I did, it threw me to the other side of the road.

In *Bozeman v. State*, 34,430 (La.App. 2 Cir. 4/4/01), 787 So.2d 357, *writ denied,* 01-1341 (La. 6/29/01), 794 So.2d 813, an accident similar to Ms. Aday's accident was at issue. The court addressed the motorist's duty:

> Prudent behavior for a motorist who inadvertently drives off the paved road onto the shoulder is first to reduce speed and then to attempt a gradual re-entry after the motorist has regained control of the vehicle. The DOTD's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp drop-off from the roadway and his consequent instinctive over steering of the vehicle. In the absence of knowledge and a reasonable opportunity to avoid shoulder defects, the motorist is entitled to assume that a highway shoulder is maintained in a reasonably safe condition, and that his inadvertent deviation onto it will not lead to disastrous consequences. Further, in *LeBlanc [v. State*, 419 So.2d 853, 856 (La.1982),] the court stated, "a motorist's instinctive overreaction to an unexpected . . .

7

> drop-off from a paved highway to its shoulder, produced by a combination of the Department's failure to provide a continuous even surface and the plaintiff's inadvertent straying onto the shoulder, is within the scope of protection of the rule of law which requires the Department to maintain safe highway shoulders."

*Id.* at 362-63.

DOTD's duty and scope of protection to the motoring public includes protecting a motorist who inadvertently strays from the highway to the shoulder. DOTD has not produced any evidence which contradicts Ms. Aday's description of how her accident occurred, and there is no evidence that she had knowledge of the drop-off before her accident. Therefore, she had the right to assume that if she inadvertently veered from the travel lane, she would be able to safely steer her vehicle back into the travel lane. The trial court's conclusion that Ms. Aday was not negligent is not error.

### *Disposition*

Summary judgment in favor of Ms. Aday is affirmed. All costs are assessed to DOTD.

**AFFIRMED.**